**BARBEE  v.  BUCKNER et al.**

No. 10205.

Court of Civil Appeals of Texas.

Austin.

Feb. 24, 1954.

Rehearing Denied March 17, 1954.

Robert C. Wilson, Victor Gleckler, Austin, for appellant.

Maynard & Kershaw, Bastrop, for appellees.

ARCHER, Chief Justice.

This is an appeal from a judgment rendered in a trespass to try title suit, to remove cloud from title and to have declared certain leases null and void.

The appeal is based on a number of points, but essentially on the error of the court in overruling a plea in abatement, plea of misjoinder, severance, motion for instructed verdict, and in discharging the jury and rendering judgment for plaintiff.

The suit was instituted by appellees against appellant to recover the title and possession of three tracts of land, described by separate field notes, but adjoining and formerly one larger tract, and alleging that on the 16th of March, 1951, plaintiffs, except Lonnie Harris, executed an oil and gas lease on the said lands, and further alleging a written contract whereby the defendant agreed to commence the drilling of a well on or before July 1, 1951, on one of the tracts and to complete said well, or until a dry hole was had at a total depth of 2,200 feet, and that failure to commence drilling of said well on or before July 1, 1951, should terminate said lease; alleging that said well was not commenced on or before July 1, 1951, and no well has been commenced on either of said tracts; and sought damages, etc.

Plaintiffs alleged that the suit was brought not only to recover title and possession but to clear the title and remove any clouds by unreleased oil and gas leases.

The defendant filed an answer of not guilty and general denial and subsequently a plea in abatement, a plea of misjoinder of parties plaintiffs, and a motion for severance, all of which were overruled by the court.

Trial was had to a jury and at the conclusion of plaintiffs' testimony the defendant filed a motion for instructed verdict, which was overruled, and the defendant offered no evidence but renewed his motion for judgment, which was overruled. The plaintiffs filed a motion to withdraw the case from the jury and for a judgment, this motion was granted and judgment rendered in favor of plaintiffs for the title and possession of the respective tracts of land to the said respective owners, and removed the cloud upon the titles of said property, declaring the oil and gas leases null and void, and for costs.

According to the testimony of one of the plaintiffs, Bill Buckner, a Mr. Zack Hanna and defendant Barbee came to Bastrop on March 16, 1951, and defendant inquired if plaintiffs had some land to lease and Buckner replied that they did and would lease it for a dollar an acre and a drilling contract to drill a well by the 1st of July, 1951, and that Barbee agreed to lease the land at a dollar an acre and to drill a well, and paid the rental of a sum of $180 for the lease on the three tracts, all of which were adjoining, and that subsequently oil and gas leases were executed and an agreement to drill a well; and that the leases would not have been given except for the agreement to drill a well; that no well was ever commenced on either of the three tracts.

The witness further testified that a few days before July 1, 1951, Mr. Barbee came and wanted an extension of time to drill, and witness told Mr. Barbee that an extension would cost $182, and was told by Mr. Barbee that he would not put up any more money. That certain deposits of rental were made in a bank in Lockhart but such were refused and the deposit slips returned to the bank.

The defendant testified that he accepted the leases, and that he executed the agree-

ment to drill, and that he intended to comply with the agreement.

The drilling contract is as follows:

"The State of Texas,  
County of Bastrop.

"Whereas, by instrument dated March 16, 1951, Bill Buckner et ux. leased to R. B. Barbee, for a period of five years commencing on the 16th day of March, 1951, and terminating on the 15th day of March, 1956, 65 acres of land, more or less, out of the J. Maxamillian League in Bastrop County, Texas, reference to which lease is hereby made for all purposes:

"And, Whereas, by instrument dated the 16th day of March, 1951, W. W. Talley et ux. leased to R. B. Barbee, for a period of five years commencing on the 16th day of March, 1951, and terminating on the 15th day of March, 1956, 65 acres of land, more or less, out of the J. Maxamillian League in Bastrop County, Texas, reference to which lease is hereby made for all purposes:

"And Whereas, by instrument dated the 16th day of March, 1951, John Buckner et al. leased to R. B. Barbee, for a period of five years commencing on the 16th day of March, 1951, and terminating on the 15th day of March, 1956, 52 acres of land, more or less, out of the J. Maxamillian League in Bastrop County, Texas, reference to which lease is hereby made for all purposes:

"And, Whereas, *said* all of said leases are what are commonly known as the Producers 88 Revised, Texas, leases, providing for a yearly rental of One ($1.00) ———— per acre:

"And, Whereas, the lessors in all of said instruments above are desirous of and want a well drilled for the purpose of discovering oil and/or gas on said land and premises, and the Lessee therein, R. B. Barbee, has agreed to drill a well upon one of said three tracts of land:

"Now, Therefore, Know All Men By These Presents, that I, R. B. Barbee, the lessee in all of said above described oil and gas leases, for and in consideration of the said above mentioned parties leasing said land to me, hereby agree and hereby bind and obligate myself to commence the drilling of a well for the purpose of testing said land for oil and/or gas; said well to be commenced on or before the 1st day of July, 1951, and drilling operations to be continued in due course and with due diligence until said well is brought in as a producer or until the same is abandoned as a dry hole: said well to be drilled to a depth of 2200 feet unless oil be discovered in paying quantities at a lesser depth.

"In the event that drilling operations are not commenced upon one of said above three described tracts of land on said 1st day of July, 1951, and drilling operations continued with due diligence as hereinabove provided, then and in that event all of said above three described leases for oil and/or gas on said three tracts of land, shall terminate and be null and void and of no further force and effect and the lessee therein agrees and hereby binds and obligates himself to execute a release on the same to the lessors therein.

"Witness My hand this the 16th day of March, 1951.

"R. B. Barbee."

The appellant contends that the following paragraph in the leases is a condition precedent, and that it was error to overrule the plea in abatement.

"In the event lessor considers that lessee has not complied with all its obligations hereunder, both expressed and implied, before production has been secured or after production has been secured, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bring-

ing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligation hereunder."

The three leases are on similar forms and provide for the payment of a sum of money as a consideration for the leases, and each lease describes a separate tract of land by field notes.

The drilling agreement refers to the three leases by name of lessors, acreage, league and makes them a part of the agreement for all purposes.

The court made findings of fact and conclusions of law as follows:

"Findings of Fact

"I.

"That on or about July 2, 1951 the plaintiffs Bill (William) Buckner and wife, Allie Mae Buckner, were the owners in fee together with all minerals of the property described in Paragraph II of Plaintiffs' Second Amended Original Petition and that the plaintiff, Lonnie Harris, was the legal owner in fee and the plaintiffs, W. W. Tally and wife Heniretta Tally, were the legal owners of the minerals of the real estate described in Paragraph III of Plaintiffs' Second Amended Original Petition, and that John Buckner, Mae Buckner, Clyde Rice and wife, Erna Rice, Bill (William) Buckner and wife, Allie Mae Buckner, D. B. Buckner and wife, Edith Buckner, Pearl Buckner, Delton Buckner and wife, Essie Lee Buckner, were the owners in fee together with all minerals of the property described in Paragraph IV of Plaintiff's Second Amended Original Petition.

"II.

"That on or about March 16, 1951, said plaintiffs entered into a contract with defendant, R. B. Barbee, wherein plaintiffs agreed to execute five year commercial oil and gas leases, on their respective tracts of land, to the defendant, R. B. Barbee, for the consideration of the sum of One And No/100 ($1.00) Dollars per acre bonus and the further consideration of the drilling of an oil and gas well on one of said tracts of land, the drilling of said well to be commenced on or before the first day of July, A. D. 1951 and drilling operations to be continued with due diligence until said well was brought in as a producing well or until the same was abandoned as a dry hole, said well to be drilled to a depth of two thousand two hundred (2200) feet unless oil was discovered in paying quantities at a lesser depth and failure to drill to terminate said leases and said contract and agreement between the plaintiffs and the defendant, being evidenced by three oil and gas leases executed by the respective plaintiffs and agreement for drilling of said well executed by defendant.

"III.

"That the defendant failed to commence the drilling of an oil and gas well on said property on or before July 1, 1951 and has never commenced the drilling of a well on said property nor complied with the terms of said contract.

"IV.

"That the defendant failed and refused to execute a release of said oil and gas leases after repeated demands were made by the plaintiffs on the defendant.

"Conclusions of Law

"I.

"That the oil and gas leases executed by plaintiffs to defendant and

agreement to drill well executed by defendant to plaintiffs grew out of one transaction and constructed together evidenced the intention of the parties herein.

## "II.

"That there was a failure of the original consideration for the execution of said leases as the agreement to drill well was a part of the original consideration for the giving of said leases.

## "III.

"That the plaintiffs should recover title and possession of said properties and that said leases and each of said leases should be removed as clouds upon the respective tracts of land owned by the plaintiffs and that all claims of defendant be removed from said properties."

We do not believe the court was in error in overruling the plea in abatement, plea of misjoinder or of severance.

■ It is uncontroverted that the leases would not have been given without the obligation to drill a well, and that such well has not been drilled and the plaintiffs were under no obligation to perform the condition precedent, because the suit was based on a failure of the original consideration. The printed portion in the leases does not apply to the original consideration paid and to be performed, and does not alter the terms or conditions of the written contract to drill a well by a specified date.

■ The leases by their terms became of no further effect on July 1, 1951. Then the fact that the appellant by his actions in attempting to secure an extension of his contract to drill was a recognition that the leases had expired, and if a notice was required, such action was a waiver of such notice.

The leases and the contract were the reducing to writing of the agreement between the plaintiffs and the defendant, and constitute one transaction between the parties. The parties plaintiffs had a common interest and the injuries complained of had a common source, and the issues in the case are the same, and all the evidence germane to each of said parties is admissible as to all and the recovery is common to all plaintiffs, and a trial could be had without confusion, and all matters connected with the cause of action could be adjudicated in one suit. 1 Tex.Jur. Sec. 37, p. 636, Sec. 45, p. 660.

■ The trial court has great discretion upon the question of joinder of parties and causes of action, and consolidation or separation of causes, and there was no abuse of discretion in not severing the claims.

Texas Rules of Civil Procedure, Nos. 37 to 43, inclusive, No. 97 and No. 174; City of Wichita Falls v. Bruner, Tex.Civ.App., 191 S.W.2d 912; Wilson v. Ammann & Jordon, Tex.Civ.App., 163 S.W.2d 660, error dismissed; Associated Growers v. Smith, Tex.Civ.App.1952, 244 S.W.2d 348.

It is uncontroverted that appellant failed to commence the drilling of an oil and gas well on one of the tracts of land on or before July 1, 1951, and the testimony is that the plaintiffs agreed to execute the leases for a cash bonus and the drilling of well before July 1, 1951, and would not have executed such lease except for the consideration of the drilling of the well.

The drilling contract was made and entered into at the same time that the leases were made, and the three leases and the contract were one transaction.

■ The contract referred to each of the leases and made reference to them for all pertinent purposes and the leases and the contract may be considered as one for the purposes of determining whether the requirements of the statute has been complied with and the leases and the contract were admissible in order to show the complete intention of the parties. Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61.

We believe that the court was justified in sustaining the plaintiffs' Motion to Withdraw the Case from the jury and in rendering judgment as there were no controverted issues of fact. The findings of the court are supported by the record and the court correctly applied the law.

As we have stated, the leases and the contract were executed as one transaction and parol evidence was admissible to enable the court to arrive at the parties' true intent. Humble Oil & Refining Co. v. Mullican, 144 Tex. 609, 192 S.W.2d 770.

The judgment of the trial court is affirmed.

Affirmed.